[Sac. No. 5684. In Bank. May 4, 1945.]

BILLY BURGESS, a Minor, etc. et al., Appellants, v. SAMUEL A. CAHILL et al., Defendants; H. P. GARIN COMPANY (a Corporation), Respondent.

Gumpert & Mazzera and Charles A. Zeller for Appellants.

Neumiller & Ditz and C. H. Hogan for Respondent.

SHENK, J.—Plaintiffs have appealed from a judgment for the defendant H. P. Garin Co. entered pursuant to a directed verdict. No appeal was taken from the separate judgments entered for the plaintiffs against the other defendants.

The settled rule is that a court may direct a verdict only when, disregarding conflicting evidence and giving plaintiffs' evidence all the value to which it is legally entitled,

indulging in every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiffs. (*Estate of Lances*, 216 Cal. 397, 400 [14 P.2d 768]; *Estate of Flood*, 217 Cal. 763, 768 [21 P.2d 579]; *Burlingham* v. *Gray*, 22 Cal.2d 87, 94 [137 P.2d 9].) Viewing the evidence in accordance with the rule, the following facts appear:

The defendant H. P. Garin Co. was engaged in a farming enterprise on Bouldin and other islands situated about eight miles northwest of Stockton. In 1942 this defendant employed Samuel Cahill as a mechanic to keep its farm machinery in repair. The company provided Cahill with a Ford pickup truck for his exclusive use while in its employ. The car was garaged at Cahill's home. It was used on many occasions for his personal business, and at least once on a fishing trip to Bouldin Island. The company furnished the oil and gasoline for the car but made no effort to check the mileage or the amount of fuel consumed. Printed stickers were attached to some of the company's cars prohibiting the use of the machines for private purposes, but none was attached to the car in the possession of Cahill. On January 17, 1943, at 7 o'clock p. m., Cahill, his wife and son, were riding in the car for the purpose of obtaining some plants and shrubs to be planted at the site of a new home. On this trip, and while Mrs. Cahill was driving, a collision occurred between the car and an automobile driven by Utah R. Thornburgh. As a result of the accident Thornburgh and another person in his car were killed and others seriously injured.

An issue arose on the trial as to whether Cahill was expressly prohibited from using the car for his personal purposes, and therefore whether he had permission for its general use. Cahill testified that he at no time received instructions, either oral or written, restricting its use to company business.

At the conclusion of the trial, the court instructed the jury to return a verdict in favor of the defendant company on the ground that there was no substantial evidence that the Ford pickup was being operated at the time of the accident with the permission of the owner of the vehicle. The jury returned a verdict in compliance with that instruction and judgment was entered accordingly.

The asserted liability of the defendant corporation is based on section 402 of the Vehicle Code, which provides in part:

"Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

It becomes necessary to determine whether the trial court correctly ruled that there was insufficient evidence to go to the jury on the question of permission of the employer for the general use of the car by the defendant Cahill.

Prior to the enactment of the imputed liability statute the general rule was that the owner of an automobile who was not present at the time of the negligent act which caused injury to a third person could not be held liable unless it was shown that the person in charge was the agent or servant of the owner and at the time was engaged in his service. (*Buelke* v. *Levenstadt,* 190 Cal. 684 [214 P. 42].)

A reading of the language of the statute and a review of the decisions in this state reveal that the legislative purpose in the enactment of section 1714¼ of the Civil Code (now section 402 of the Vehicle Code), was to protect innocent third parties from the careless use of automobiles and that this protection should be paramount to the rights of an owner who has permitted the use of his car by others even though he, personally, was not guilty of negligence. The wording of the statute is clear and indicates that purpose. The statute defines the owner's liability in cases where the principle of *respondeat superior* is inapplicable, in order to make the owner liable for the negligence of any person to whom he had expressly or impliedly given permission to operate his car. (*Souza* v. *Corti,* 22 Cal.2d 454, 457 [139 P.2d 645, 147 A.L.R. 861], citing *Bayless* v. *Mull,* 50 Cal.App.2d 66 [122 P.2d 608]; *Plaumbo* v. *Ryan,* 213 App.Div. 517 [210 N.Y.S. 225].) The legislation was plainly intended to enlarge the liability of the nonculpable owner of a motor vehicle for its operation on a public highway. The foundation of the statutory liability is the permission given to another to use an instrumentality which if improperly used is a danger and menace to the public.

In construing the statute earlier cases have seemed to turn

on the question of knowledge or information on the part of the owner that the vehicle was being driven by the person with whose negligence he is sought to be charged, before implied permission could be inferred. For example, in *Howland* v. *Doyle*, 6 Cal.App.2d 311 [44 P.2d 453], it was said: "A person cannot be said to have permitted that of which he he had no knowledge or information," citing *Bradford* v. *Sargent*, 135 Cal.App. 324, 332 [27 P.2d 93]. But in *Burford* v. *Huesby*, 35 Cal.App.2d 643 [96 P.2d 380], it was recognized that prior knowledge was not necessary in order that implied permission be inferred, and that knowledge or information of the intended use of the car had reference to the element of "express" as opposed to "implied" consent.

The defendant relies on the cases of *Henrietta* v. *Evans*, 10 Cal.2d 526 [75 P.2d 1051], and *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64 [77 P.2d 1059], where it was held that use by the permittee beyond certain express restrictions was without permission. They are not determinative here. There was no question in those cases of either express or implied permission for general use.

Here the employer and employee relationship existed. The defendant employer gave exclusive possession and permission for the use of the vehicle to its employee, and, according to the testimony most favorable to the plaintiff, without restrictions upon its use, without effort to check the mileage, or the consumption of gasoline or otherwise supervise or limit the use of the car.

Evidence of employer and employee relationship together with the other factors mentioned would support an inference that the vehicle was being driven with the permission of the owner. (*Blank* v. *Coffin*, 20 Cal.2d 457 [126 P.2d 868]; *Hicks* v. *Reis*, 21 Cal.2d 654, 659 [134 P.2d 788], and cases cited.) Those cases involved a similar relationship and evidence on the issue of permissive use. In the case of *Blank* v. *Coffin* a judgment entered on a directed verdict in favor of the defendant owner was reversed. It was held in the Hicks case on the appeal from the judgment against the owner, that the trier of the facts was justified in inferring that permission existed.

The defendant owner refers at length to evidence in its favor and in conflict with the evidence favorable to the plaintiff. The presence in the record of such conflicting evidence

is readily conceded but it may not influence the result on an appeal of this character.

▮ The fact that at the time of the accident the wife of the defendant Cahill was operating the vehicle would not defeat recovery. Mr. Cahill was in the car and his wife was driving with his consent. If an automobile is being driven by another with the consent of the permittee, where the permittee accompanies the driver, the owner is liable to the extent set forth in section 402 of the Vehicle Code. (*Hicks* v. *Reis, supra; Sutton* v. *Tanger,* 115 Cal.App. 267 [1 P.2d 521]; *Hughes* v. *Quackenbush,* 1 Cal.App.2d 349 [37 P.2d 99]; *Armstrong* v. *Sengo,* 17 Cal.App.2d 300 [61 P.2d 1188]. *Cf. Souza* v. *Corti, supra.*)

It follows that a directed verdict was improperly ordered. The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I concur in the judgment of reversal and agree that the evidence was sufficient to justify the trier of fact in determining that the H. P. Garin Co. had given its consent to the operation by Cahill of the Ford pickup truck at the time and place of the accident which is the subject of this action. In my opinion it was not necessary for plaintiffs to go further than to establish the fact that the automobile came into Cahill's possession lawfully, and that he had the permission of the owner to operate it upon the highway, in order to fasten liability upon the owner for damages resulting from its negligent operation.

The language of section 402 of the Vehicle Code is clear and is not susceptible to the interpretation that an owner may give his permission to the operation by a third person of his automobile upon a public highway and restrict his liability for the negligent operation thereof by limiting such operation to time or place. The obvious purpose of the Legislature in the enactment of said section was to protect persons who might be injured as the result of the negligent operation of automobiles by persons other than the owners thereof who are operating the same with the permission of such owners. When a person entrusts the operation of his automobile to a third person out of his presence, he has placed in the hands of such third

person an instrumentality which may be used to cause injury or death to innocent persons who may become victims of his negligent use of such instrumentality. For this reason, the Legislature wisely saw fit to place liability upon the owner for such negligent operation. If the Legislature had intended that the owner should have the right to limit his liability by restricting the operation of such automobile to a specific time or place, it could have so stated, but it did not do so for obvious reasons. The protection which the statute was designed to afford would be clearly reduced by permitting the owner to so limit his liability. The owner can protect himself by insurance against any risk he may assume by permitting the operation of his automobile by third persons, while a victim of the negligent operation of such automobile suffers the same loss whether the automobile is being operated with or without the permission of the owner.

In my opinion such cases as *Henrietta* v. *Evans*, 10 Cal.2d 526 [75 P.2d 1051], and *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64 [77 P.2d 1059], are contrary to the intention clearly expressed by the Legislature by its enactment of section 402 of the Vehicle Code and should be overruled. The views expressed by the court in those cases indicates that the trend of the philosophy of the law at that time was to protect the owner of the automobile who voluntarily permitted a third person to make such use of it that an innocent victim was caused to suffer damages which would not have occurred except for the owner's voluntary act in permitting the use of such instrumentality by a third person. In my opinion the Henrietta and Engstrom cases were erroneously decided. The basic concept and philosophy underlying these decisions is out of harmony with the purpose and object of the legislation embraced within section 402 of the Vehicle Code, and this court should now declare the law to be that owners of automobiles who voluntarily permit their operation by third persons are liable to persons who suffer injuries as the result of the negligent operation of such automobiles regardless of whether the persons operating such automobiles violate the instructions of the owners as to time, place, or manner of such operation.

EDMONDS, J.—I concur in the judgment of reversal upon the ground that the evidence upon the issue of Cahill's permission to use the truck at the time of the injury presented a

question of fact for the determination of the jury. But in reaching that conclusion, Mr. Justice Shenk states that the cases of *Henrietta* v. *Evans*, 10 Cal.2d 526 [75 P.2d 1051], and *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal.2d 64 [77 P.2d 1059], are not determinative of the present controversy. That statement is correct, in my judgment, but not because, as he said: "There was no question in those cases of either express or implied permission for general use."

In the Henrietta case this court held: "On [principle], there is no fundamental ground of distinction between a limitation of time and one of purpose or place, in so far as permission is concerned; and it would seem clear that a substantial violation of either limitation terminates the original express consent and makes the subsequent use without permission. For example, an owner might entrust his car to another for the purpose of driving it to his home, or to a garage for repairs; and if the driver took the car out on a pleasure trip, it could hardly be contended that he was acting with the permission of the owner." The second decision affirmed a judgment for the defendant. As the only permission given Herndon to use the car was that he might have it for the particularly specified period, said the court, when that time had expired, he was not then driving it with the permission, either express or implied, of the owner.

Were the court now considering a judgment rendered upon evidence showing, without conflict, that the truck of the Garin Company was turned over to Cahill solely for his use in going to and from the company's place of business and not to be driven on Sundays for personal errands, the rule of the prior decisions would require a determination that the owner was not liable for damages because of the accident. But the only issue now presented is whether the directed verdict was proper.