[No. B061157. Second Dist., Div. Three. Feb. 9, 1993.]

GREGORY GALVIS et al., Plaintiffs and Appellants, v.
ORLANDO PETITO, Defendant and Respondent.

## Counsel

Abbas Hadjian and Peter R. diDonato for Plaintiffs and Appellants.

Fonda & Garrard, Nancy E. Dunne and Jeffrey E. Di Tolla for Defendant and Respondent.

## Opinion

**KLEIN, P. J.**—Plaintiffs and appellants Gregory Galvis (Galvis), Angelica Lopez (Lopez), and Maria Torres (Torres) (collectively, plaintiffs) appeal from a judgment in favor of defendant and respondent Orlando Petito (Petito) based on the grant of the latter's motion for summary judgment.

Because we conclude Petito is liable to plaintiffs under Vehicle Code section 17150[1] as the owner of a vehicle which was negligently operated by a permissive user who himself was immune from liability pursuant to the Workers' Compensation Act (WC Act), we reverse the judgment.

### Summary Statement

Under section 17150 a vehicle owner is liable to a person injured through the negligent operation of such vehicle by a permissive user. The amount of liability is limited to $15,000 for one person or $30,000 for more than one person in any one accident. (§ 17151.) Liability is the owner's alone and is not dependent on the liability or status of the operator.

Because the owner's liability is not "based upon principles of comparative fault" (Civ. Code, § 1431.2, subd. (a)), but merely on status as an owner, the

---

[1]All subsequent statutory references are to the Vehicle Code unless otherwise indicated.

owner's liability is not limited to economic damages but, instead, encompasses both economic and noneconomic damages.

The immunity of the negligent operator under the WC Act does not insulate a vehicle owner who is neither the plaintiff's employer nor co-employee from liability under section 17150.

Since the owner's liability does not arise from the status or liability of the operator, the defenses applicable to the operator are not available to the owner.

### FACTUAL AND PROCEDURAL STATEMENT[2]

Petito allowed George Williams (Williams), his stepson, to operate Petito's van on December 31, 1988, for the purpose of Williams's attending a mandatory breakfast meeting of employees of the Imperial Health Spa, Inc. Williams transported plaintiffs, his co-employees, to the meeting.

While they were en route, an accident occurred at the harbor off ramp of the southbound 5 freeway. The sole cause thereof was the negligent operation of the van by Williams. He tried to get back onto the freeway after having started off at the wrong exit. The van flipped over and plaintiffs sustained personal injuries.

On July 7, 1989, plaintiffs filed an action against Petito and Williams on the theory Williams negligently operated the van and Petito negligently entrusted it to him.

Petito answered and set forth a third affirmative defense for immunity from liability under section 17150 based on the fact the operator of the vehicle was immune from civil liability pursuant to the WC Act (Lab. Code, § 3601 et seq.).

On April 17, 1991, Petito filed a motion for summary judgment based on the third affirmative defense.

Plaintiffs opposed the motion and cited as controlling *Baugh* v. *Rogers* (1944) 24 Cal.2d 200 [148 P.2d 633]. There, the Supreme Court held the owner of the vehicle could be held liable for injuries caused through the negligent operation of the owner's vehicle by a permissive user, although the latter was immune from liability pursuant to the then Workmen's Compensation Act.

---

[2]The facts are excerpted from the plaintiffs' brief. Petito does not challenge their accuracy except to dispute plaintiffs' claim they were injured as the result of the accident.

Petito countered by claiming *Baugh*, which was decided in 1944, was no longer valid law.

On June 7, 1991, the trial court granted the motion for summary judgment. It found Petito, as the vehicle's owner, "is not vicariously liable under . . . [Vehicle Code] § 17150 et seq., to persons injured by the alleged negligent use of the vehicle because the vehicle operator/user is immune from liability under . . . Labor Code § 3601."[3]

## CONTENTIONS

Plaintiffs contend the trial court erred in granting summary judgment on the theory the immunity of Williams under the WC Act insulates Petito, who was neither the plaintiffs' employer nor co-employee.[4]

Plaintiffs also claim Proposition 51 does not apply to section 17150 fact situations.

Petito argues the trial court's ruling is correct and should be upheld.

## DISCUSSION

1. *Current statutory basis of owner's liability.*

Section 17150 as amended in 1967 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent . . . act . . . in the operation of the motor vehicle . . . by any person using or operating the same with the permission . . . of the owner." (See also, *Jones* v. *Ayers* (1963) 212 Cal.App.2d 646, 654-655 [28 Cal.Rptr. 223].) Liability arises solely from the owner's *status* as owner of the vehicle, not from any independent fault or wrongdoing on the owner's part. (See e.g., *Estate of Gonzalez* (1990) 219 Cal.App.3d 1598, 1603 [269 Cal.Rptr. 68]; *Dalton* v. *Baldwin* (1944) 64 Cal.App.2d 259, 262 [148 P.2d 665].)

"The foundation of an owner's liability under section 17150 is the permission, express or implied, given by the owner to another to use the motor vehicle. [Citations.]" (*Glens Falls Ins. Co.* v. *Consolidated Freightways*

---

[3]On appeal plaintiffs do not challenge the trial court's findings that plaintiffs and Williams were in the course and scope of their employment with Imperial Health Spa, Inc., at the time of the accident and that Williams was immune from civil liability under Labor Code section 3601.

[4]Where the owner is the employer or the coemployee of the injured plaintiff, a plaintiff's exclusive remedy is under the WC Act. (Lab. Code, §§ 3601, 3602.)

(1966) 242 Cal.App.2d 774, 778-779 [51 Cal.Rptr. 789]; accord, *Estate of Gonzalez, supra,* 219 Cal.App.3d at pp. 1603-1604.)

### 2. *Rationale for owner's liability.*

The intent of the Legislature in imposing liability on an owner is to protect third parties who are injured through the negligent operation of the owner's vehicle by a permissive user. In this regard *Burgess* v. *Cahill* (1945) 26 Cal.2d 320 [158 P.2d 393] stated: "[T]he legislative purpose in the enactment of section 1714¼ of the Civil Code ([subsequently] section 402 of the Vehicle Code) [presently section 17150], was to protect innocent third parties from the careless use of automobiles and that this protection should be paramount to the rights of an owner who has permitted the use of his car by others even though he, personally, was not guilty of negligence. The wording of the statute is clear and indicates that purpose." (*Id.,* at p. 323; see also, *Southern Pac. Transportation Co.* v. *Dolan* (1972) 27 Cal.App.3d 534, 540-541 [104 Cal.Rptr. 131].)

*Burgess* further explained: "The legislation was plainly intended to enlarge the liability of the nonculpable owner of a motor vehicle for its operation on a public highway. The foundation of the statutory liability is the permission given to another to use an instrumentality which if improperly used is a danger and menace to the public." (*Burgess* v. *Cahill, supra,* 26 Cal.2d at p. 323.)

### 3. *The landmark case of Baugh.*

 *Baugh* held the negligent *operator's* immunity from liability pursuant to the WC Act did not preclude recovery against the vehicle *owner* under former section 402, the predecessor of section 17150. (*Baugh* v. *Rogers, supra,* 24 Cal.2d at pp. 207-208.)[5]

In *Baugh* the negligent operator of the vehicle was the injured party's employer. Ora Baugh was employed by Dr. Francis L. Rogers, a physician and surgeon. During the course and scope of her duties she sustained injuries when a vehicle negligently operated by Dr. Rogers backed into her. The

---

[5]Subdivision (a) of former section 402 read: " 'Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle . . . by any person using or operating the same with the permission . . . of such owner, *and the negligence of such person shall be imputed to the owner for all purposes of civil damages.*' " (Italics added.)

The italicized language was deleted from 17150 in 1967 and thus, that theory of recovery. However, its presence in *Baugh* does not lessen *Baugh*'s controlling precedent as we explain *post.*

vehicle was owned by a Mr. Warnock and driven with his permission. (24 Cal.2d at pp. 204, 215.) Under the Labor Code an injured employee's exclusive remedy against her employer was for workers' compensation. The negligent operator in *Baugh* was therefore immune from civil liability for the plaintiff's injuries. (*Id.*, at p. 213.)

However, no such immunity flowed to the owner of the vehicle.

*Baugh* proclaimed: "The special defense of the negligent operator, based on the business relationship and status of the operator and the plaintiff, and the provisions of the Workmen's Compensation Law, is not available to the owner. It is the negligence of the operator, and not his *liability or status*, which is imputed to the owner. The negligence being imputed, the liability therefor is his own." (24 Cal.2d at p. 213, italics added.)

### 4. *Baugh is controlling here.*

The holding and analysis in *Baugh* is equally controlling here. As demonstrated, *post*, subsequent legislative changes have not overruled *Baugh*. The 1967 amendment to section 17050, which deleted the language imputing negligence of the vehicle operator to the owner, does not affect *Baugh*.

*Baugh* held the defenses available to the vehicle operator were not available to the owner because the owner's liability under the statute was his own. This reasoning is consistent with the Supreme Court's earlier proclamation that "[t]he foundation of the statutory liability is the permission [of the owner] given to another to use [the vehicle] . . . ." (*Burgess* v. *Cahill*, *supra*, 26 Cal.2d at p. 323.)

Contrary to Petito's assertion, the holding in *Baugh* was not dependent on the doctrine of imputed negligence. When *Baugh* referred to the negligence of the operator being imputed to the owner, the court was merely explaining that the statute charged the owner with the negligent *conduct* of the operator.[6] The fact the operator was the employer of the injured party and immune from liability for negligence did not alter the fact the operator had committed a negligent act which was chargeable to the owner.

Moreover, although the present case involves a negligent operator of the vehicle who is a co-employee rather than an employer, this fact does not

---

[6]Although the operator's negligence is no longer imputed to the owner for all purposes of civil damages, the operator's negligent conduct continues to be charged to the owner. This is clear from the current wording of section 17150: "Every owner . . . is liable . . . for death or injury to person . . . resulting from a *negligent* . . . act or omission in the operation of the motor vehicle . . . by any person using or operating the same with the permission . . . of the owner." (Italics added.) Thus, the negligent conduct of the operator remains an element of an action against the owner under section 17150.

render *Baugh* inapposite. We discern no cognizable difference between the immunity afforded an *employer* under former section 3601 of the Labor Code (now Lab. Code, § 3602), which was involved in *Baugh*, and the comparable immunity afforded a *co-employee* under the present section 3601, which is the immunity at issue here.[7] There appears no reason to treat an owner of a vehicle operated by the employer of the injured party different from an owner of a vehicle operated by a co-employee of the injured party. In neither instance does the immunity afforded the negligent operator embrace the vehicle's owner.

### 5. Viability of Baugh unaffected by enactment and subsequent amendment of section 17150.

#### a. Enactment of section 17150 in 1959.

Section 402, enacted in 1935, is the predecessor of section 17150, which was passed in 1959. (See Stats. 1935, ch. 27, § 402, p. 153, as amended by Stats. 1937, ch. 840, § 1, p. 2353; Stats. 1959, ch. 3, p. 1654; § 17150.)

After enactment of section 17150, *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641], reaffirmed the holding in *Baugh* as follows: "The [*Baugh*] court held that the employer-employee relationship did not bar the employee from bringing an action against the third party under Vehicle Code section 402 [now §§ 17150-17157]." (*Id.*, at p. 72.)

Similarly, in reliance on *Baugh*, *Van Meter* v. *Reed* (1962) 207 Cal.App.2d 866, 868-869 [24 Cal.Rptr. 688], held: "[I]f, while the motor vehicle is being driven by another with permission, express or implied, of the owner, the negligence of the operator causes injury to a third person, liability is imposed upon the owner under section 17150 of the Vehicle Code even though under [former] section 3601 of the Labor Code the operator may have

---

[7]At this juncture we point out *Baugh* also held: "Our workmen's compensation laws were not designed to relieve one other than the employer from any liability imposed by statute or by common law. . . . [Citation.]" (*Baugh* v. *Rogers, supra*, 24 Cal.2d at p. 214.) At that time section 3601 of the Labor Code provided immunity only to employers. (Stats. 1937, ch. 90, p. 269.)

In 1959 section 3601 was amended to extend immunity to co-employees (Stats. 1959, ch. 1189, § 1, p. 3275), and thus, modified the holding in *Baugh*. However, the immunity afforded co-employees was more limited in that "[w]orkers' compensation was the exclusive remedy only if the employee was 'acting within the scope of his or her employment. . . .'" (*Hendy* v. *Losse* (1991) 54 Cal.3d 723, 733-734 [1 Cal.Rptr.2d 543, 819 P.2d 1], quoting from § 3601 as amended, italics omitted.)

With the further amendment of sections 3601 and 3602 in 1982, section 3601 pertains only to employees while the exclusive remedy provisions applicable to employers is now found in section 3602. (54 Cal.3d at p. 735.)

a special defense to an action brought against him by the injured [party]. [Citation.]"

b. *Amendment of section 17150 deleting imputation language.*

In 1967, section 17150 was amended to delete the last clause: "and the negligence of [the operator] shall be imputed to the owner for all purposes of civil damages." (Stats. 1967, ch. 702, § 1, p. 2072.)

c. *Petito's contention the deleted language undermined Baugh rejected.*

Petito contends deletion of this language undermined *Baugh.* He urges the reason the workers' compensation defense of the negligent operator was not available to the owner in *Baugh* was "because '[i]t is the *negligence* of the operator, and not his liability or status, which is imputed to the owner.' (*Baugh, supra,* [24 Cal.2d] at p. 213.) (Emphasis added.)" He argues eliminating the imputation of the operator's negligence to the owner thus removes the barrier to making the workers' compensation defense of the negligent operator available to the owner.

We find his position unpersuasive. Petito has misapprehended the import of *Baugh. Baugh* did not hold the workers' compensation defense of the negligent operator was unavailable to the owner *because the operator's negligence was imputed to the owner.* When the above quote is viewed in context, the reason the defense of the operator is unavailing to the owner is clear: The owner's "liability [under former section 402 and now section 17150] is his own." (*Baugh* v. *Rogers, supra,* 24 Cal.2d at p. 213.)[8] Thus, the owner has no recourse to any defenses available to the operator in whose shoes the owner does *not* stand.

The legislative history of this amendment indicates the purpose for deleting the language was simply to remedy the situation where the owner, who is faultless, was barred from recovery of damages from a negligent third party by the imputation of the vehicle operator's *contributory* negligence to the owner.[9] (Stats. 1967, ch. 702, § 1, p. 2072.)

Thus, contrary to Petito's assertion, the 1967 language deletion from section 17150 did not undermine *Baugh* on this point.

---

[8]As we pointed out, *ante,* the foundation of the owner's liability under section 17150 and former section 402 always has been *status* as the owner of the vehicle who permitted its use by a negligent operator, not the fact the operator's negligence is imputed to the owner.

[9]"The last clause of section 17150 has been deleted because it, together with Section 17158, prevented an innocent vehicle owner from recovering any damages for a personal injury caused by the concurring negligence of his driver and a third person. Instead of barring an owner's cause of action in such a case, section 17150 as amended permits him to recover his

6. *Enactment of Labor Code section 3864 and amendment of section 3601 abrogating the right of indemnity did not overrule the Baugh holding that immunity of the negligent operator does not insulate the owner from liability.*

*Baugh* also held "[t]here is nothing in the Labor Code which abrogates" the right of the owner to recover from the negligent operator the total amount of any judgment and costs recovered against the owner. (*Baugh* v. *Rogers, supra,* 24 Cal.2d at pp. 215-216; see also, § 17153.) When *Baugh* was decided, "the exclusive remedy provisions of the Workmen's Compensation Act (Lab. Code, §§ 3600-3601) did not preclude the third party owner from gaining indemnity from the employer-operator under Vehicle Code section 402 [now section 17153]." (*Witt* v. *Jackson, supra,* 57 Cal.2d at p. 72.)

The Labor Code's subsequent proscription against indemnity, as discussed, *post,* does render invalid the holding in *Baugh* that the owner's right of subrogation or indemnity against the operator under the Vehicle Code is not abrogated by anything in the Labor Code. (See *Pacific Gas & Elec. Co.* v. *Morse* (1970) 6 Cal.App.3d 707, 713, 715 [86 Cal.Rptr. 7]; see also, Lab. Code, §§ 3864 [employer] and 3601 [co-employee].)

In contrast, the companion holding in *Baugh* that the operator's immunity under the WC Act does not insulate the owner from liability under the Vehicle Code remains extant in the face of those same developments.

a. *Petito's claim to the contrary unavailing.*

Petito contends such holding is no longer viable in light of the subsequent enactment of Labor Code section 3864[10] and the amendment to Labor Code section 3601.[11] He urges "these legislative changes have eradicated the equitable justification for imposing vicarious liability on a vehicle owner

---

damages from the negligent third person." (Legis. Com. Comment to § 17150, 66A West's Ann. Cal. Codes, p. 110.)

[10]Section 3864, enacted in 1959, provides: "If an action as provided in this chapter prosecuted by the employee, the employer, or both jointly against the third person results in judgment against such third person, or settlement by such third person, the employer shall have no liability to reimburse or hold such third person harmless on such judgment or settlement in absence of a written agreement so to do executed prior to the injury." (Added by Stats. 1959, ch. 955, § 1, p. 2986.)

[11]As amended in 1959, section 3601 of the Labor Code, limited a co-employee's liability for ordinary negligence within the scope of employment, and provided in pertinent part: "(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is . . . the exclusive remedy for injury or death of an employee against the employer or against any other employee of the employer acting within the scope of his employment . . . ." (Stats. 1959, ch. 1189, § 1, p. 3275.)

because the owner's rights of reimbursement against the negligent operator are precluded by the exclusive remedy provisions of the workers' compensation law."

In this regard Petito cites as controlling *Pacific Gas & Elec. Co.* v. *Morse, supra,* 6 Cal.App.3d 707, which interpreted Labor Code sections 3601 and 3864.

We acknowledge *Pacific Gas & Elec. Co.* observed that "section 3864 eliminated the employer's liability for equitable or implied indemnification of a third party tortfeasor." (6 Cal.App.3d at p. 713.) The court also found "the claim of one seeking indemnity for damages paid the injured [party]" for ordinary negligence against a co-employee is barred under section 3601. (*Id.,* at p. 715.)

Nonetheless, based on our review of the case in its entirety, we find *Pacific Gas & Elec. Co.* to be factually inapposite. Since *Pacific Gas & Elec. Co.* did not involve the issue of an owner's liability under section 17150, that case fails to shed any light on the issues before us.

Petito invites this court to disregard the import of *Baugh* because the owner cannot obtain reimbursement from the vehicle's operator. In essence, he argues section 17150 is inapplicable where the owner has no right of indemnity against the negligent operator because the owner is "negligent free" and the owner's liability must be viewed as merely vicarious.

*Baugh* rejected a similar argument and held the liability of the owner under subdivision (a) of former section 402 (presently § 17150) did not depend on the availability of the owner's right to protect himself, e.g., obtain indemnity from the operator. (*Baugh* v. *Rogers, supra,* 24 Cal.2d at pp. 208-209.) *Baugh* explained the Legislature's purpose was to impose liability on the owner for the negligent conduct of the permissive user "of his vehicle, which, as between the owner and the injured person, is direct and unconditional within the limits set." (*Ibid.*)

*Baugh* further explained: " 'It would seem that the main purpose of this section is to make such an owner directly responsible to a person injured through the negligence of an operator driving the car with the owner's permission, although the section also contains provisions calculated to protect the owner from the results of the operator's negligence in so far as this may be done between those parties without interfering with the rights of the injured party. . . .' " (*Baugh* v. *Rogers, supra,* 24 Cal.2d at p. 209, quoting with approval from *Broome* v. *Kern Valley Packing Co.* (1935) 6 Cal.App.2d 256, 261 [44 P.2d 430].)

From the foregoing discussion, we are bound to reject Petito's contention and to conclude the liability of an owner under section 17150 is independent

from the ability or inability of the owner to obtain indemnity from the negligent operator of the vehicle or the operator's employer.[12] Thus, the holding in *Baugh* that the immunity of the negligent operator under the WC Act does not insulate the owner from liability under the Vehicle Code is not overruled by the enactment of Labor Code section 3864 and the amendment of section 3601 in 1959. These statutory changes merely bar the owner's right of subrogation or indemnity against the operator where the latter is the employer or co-employee of the injured party.

7. *Proscription against double recovery does not mandate abandonment of Baugh.*

Petito contends that unless the holding of *Baugh* is abandoned, there is a potential danger plaintiffs could obtain a double recovery, i.e., payment of the same damages by both owner and employer, in violation of *Witt* v. *Jackson* , *supra*, 57 Cal.2d at page 73. He acknowledges no double recovery would exist if the employer could obtain a credit for compensation benefits. However, he asserts this is not possible since the employee here would be 100 percent negligent, which negligence would be imputed to the employer and cut off any right to reimbursement (see *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 842, 847 [150 Cal.Rptr. 888, 587 P.2d 684]).

We reject Petito's contention. He misapprehends the import of the principles set forth in *Witt*. In *Witt* the issue of double recovery did not arise in the context of enabling the employer to be reimbursed. *Witt* held in order not to "allow him to profit from his own wrong," a negligent employer was not entitled to *any* reimbursement for compensation payments made to an injured employee. (*Witt* v. *Jackson, supra,* 57 Cal.2d at p. 73; accord, *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 834.) This proscription against reimbursement was subsequently modified to allow a "concurrently negligent employer [to] receive either credit or reimbursement for the amount by which his compensation liability exceeds his proportional share of the injured employee's recovery. [Citation.]" (*Id.,* at p. 842.)

However, no right to reimbursement necessarily exists. If the employer were 100 percent negligent, the employer has no right to reimbursement in any amount. (22 Cal.3d at p. 842.)

It was only after holding the employer had no right to reimbursement that *Witt* further held: "Since, however, the injured employee may not be allowed

---

[12]Where the accident occurred during the course and scope of the operator's employment, then the operator's employer is ultimately responsible for the resulting damages under the doctrine of respondeat superior.

double recovery, his damages must be reduced by the amount of workmen's compensation he received." (*Witt* v. *Jackson, supra,* 57 Cal.2d at p. 73.)

To implement this proscription against double recovery, an offset defense based on the amount of workers' compensation benefits paid by an employer was created in favor of a defendant charged with negligence. "[Such] third party tortfeasor should be allowed to plead the employer's negligence as a *partial* defense, in the manner of *Witt.* Once this issue is injected into the trial, the trier of fact should determine the employer's degree of fault according to the principles of *American Motorcycle [Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 591-599 (146 Cal.Rptr. 182, 578 P.2d 899)]. The court should then deduct the employer's percentage share of the employee's total recovery from the third party's liability—up to the amount of the workers' compensation benefits assessed against the employer." (*Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d at p. 842, italics added.) By this device a plaintiff is precluded from a double recovery, and at the same time a defendant is required only to pay the proportionate share of the judgment based on the defendant's degree of fault.

The *Witt* proscription against double recovery, however, is not absolute. In *De Cruz* v. *Reid* (1968) 69 Cal.2d 217, 225 [70 Cal.Rptr. 550, 444 P.2d 342] the court cautioned: "Our decision in *Witt* v. *Jackson, supra,* 57 Cal.2d 57, was neither a complete abrogation of the [collateral source rule] nor a sweeping interdict against double recovery of all kinds."[13]

*De Cruz* explained "[t]o this extent, namely when the employer is *concurrently negligent,* our decision [in *Witt*] limited the prior rule declaring that the receipt of workmen's compensation benefits is extraneous to the issues and cannot be considered in reduction of the tortfeasor's damages [citation]." (69 Cal.2d at p. 225.)

From the foregoing it is clear the *Witt* proscription against double recovery applies only to an action for negligence,[14] and thus, has no bearing on the present action which is not based on the owner's negligence. As demonstrated, *ante,* as a matter of public policy, liability is imposed on the

---

[13]As a general matter, under the collateral source rule a plaintiff's damages would not be reduced by the amount of workers' compensation benefits received. (*De Cruz* v. *Reid, supra,* 69 Cal.2d at pp. 223-224.)

[14]In *Witt,* plaintiffs Witt, the driver, and Grossman, a passenger, were injured when the defendant's car struck the rear of their car. Plaintiffs' employer intervened to recover workers' compensation benefits, inter alia, paid on behalf of plaintiffs. (*Witt* v. *Jackson, supra,* 57 Cal.2d at p. 62.) The action against defendant was based on the theory of negligence. (*Id.,* at p. 65.) Defendant raised the defense of contributory negligence based on Witt's alleged violation of two Vehicle Code safety rules. (*Id.,* at p. 63.) Judgment was for defendant and against both plaintiffs and the employer. (*Id.,* at p. 62.) *Witt* noted: "In returning a general verdict for defendant the jury must have found that defendant was not

owner simply because of ownership status and because the negligent opera-
tor had permissive use of the vehicle. Such liability does not depend on a
finding of liability on the part of the negligent operator. The negligent
conduct of the operator, like ownership of the vehicle, is merely an element
which plaintiff must prove to prevail in an action based on liability created
by a statute.

8. *Adoption of doctrines of comparative negligence and indemnity did
not supplant Baugh.*

In addition, we reject Petito's reliance on the comparative negligence and
indemnity principles embodied in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804
[119 Cal.Rptr. 858, 532 P.2d 1226] and *American Motorcycle Assn.* v.
*Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899] to
undermine *Baugh.* Again, we point out the basis of the owner's liability
under section 17150 is *statutory* in nature and does not involve the *owner's
fault* in any degree. Thus, the concept of apportionment according to fault
among joint tortfeasors has no application to this situation. (Cf. *Evangelatos*
v. *Superior Court* (1988) 44 Cal.3d 1188, 1196-1198 [246 Cal.Rptr. 629, 753
P.2d 585].)

9. *Proposition 51 is inapplicable to damages under section 17151 for
liability imposed pursuant to section 17150.*

■ Petito urges an owner's liability for damages under section 17151[15] is
limited to the injured party's *economic* damages. He contends both *DaFonte*
v. *Up-Right, Inc.* (1992) 2 Cal.4th 593 [7 Cal.Rptr.2d 238, 828 P.2d 140],
which interprets Proposition 51 (Civ. Code, §§ 1431.1-1431.5), and Propo-
sition 51 itself, compel this conclusion. He argues noneconomic damages are
assessed only in proportion to each tortfeasor's percentage of fault and the
owner of the vehicle is faultless since owner liability is merely vicarious.

Neither *DaFonte* nor Proposition 51 offers any support for Petito's posi-
tion. The principal purpose of Proposition 51 is to make liability for non-
economic damages several rather than joint and to limit such liability in

negligent or that Witt was contributively negligent. If defendant [were] not negligent, he is, of
course, not liable to the [employer]; if he [were] negligent but the jury found that Witt was
contributively negligent, his negligence is imputed to his employer . . . and bars its recovery
for . . . the payments made to Witt for compensation and medical expenses. [Citations.]" (*Id.*,
at pp. 68-69.)

[15]Section 17151 provides in pertinent part:

"(a) The liability of an owner . . . is limited to the amount of fifteen thousand dollars
($15,000) for the death of or injury to one person in any one accident and, subject to the limit
as to one person, is limited to the amount of thirty thousand dollars ($30,000) for the death of
or injury to more than one person in any one accident and is limited to the amount of five
thousand dollars ($5,000) for damage to property of others in any one accident."

proportion to each tortfeasor's fault. Further, Proposition 51 is expressly limited to "any action for personal injury, property damage, or wrongful death, *based upon principles of comparative fault*[.]" (Civ. Code, § 1431.2, subd. (a), italics added.) As demonstrated repeatedly herein, imposition of liability upon the owner of the vehicle pursuant to section 17150 is not based on any culpability on the part of the owner, but merely status as an owner. Thus, Proposition 51 is inapposite. (See *Miller* v. *Stouffer* (1992) 9 Cal.App.4th 70, 84-85 [11 Cal.Rptr.2d 454]; *Rashtian* v. *Brach-BH, Inc.* (1992) 9 Cal.App.4th 1847, 1852-1854 [12 Cal.Rptr.2d 411].)

## CONCLUSION

The immunity of the negligent operator under the WC Act does not insulate a vehicle owner who is neither a plaintiff's employer nor co-employee from liability under section 17150. Section 17150 liability arises from the owner's status and the negligent operation of the vehicle by the permissive user resulting in injury. Since the owner's liability does not arise from the operator's status or liability, the defenses applicable to the operator are not available to the owner.

Moreover, because the owner's liability is not "based upon principles of comparative fault" (Civ. Code, § 1431.2, subd. (a)), but merely on ownership status, the owner's liability under section 17150 is not limited to economic damages but, instead, encompasses both economic and noneconomic damages.

## DISPOSITION

The judgment is reversed. Plaintiffs to receive costs on appeal.

Croskey, J., and Hinz, J., concurred.

A petition for a rehearing was denied March 8, 1993, and respondent's petition for review by the Supreme Court was denied May 27, 1993.